IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| William T. Coleman, | ) | C/A No.: 1:12-1916-JFA-SVH |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| Sgt. Khatari McMillan,[1] | ) | |
| Defendant. | ) | |

Plaintiff William T. Coleman, proceeding *pro se* and *in forma pauperis*, filed this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights while detained at York County Detention Center ("YCDC").[2] Plaintiff sues Khatari McMillan ("Defendant") for alleged excessive force and deliberate indifference to serious medical needs. This matter comes before the court on the following motions: (1) Plaintiff's motion to strike Defendant's defenses [Entry #35]; (2) Plaintiff's motion for summary judgment [Entry #46]; and (3) Defendant's motion for summary judgment

---

[1] Plaintiff originally named McMillan and the YCDC as defendants in this case. [Entry #1; Entry #1-2]. On July 29, 2013, the court dismissed YCDC from the action as an improper defendant. [Entry #55]. Plaintiff's pleadings discuss the actions of several YCDC staff. However, Plaintiff never amended his complaint to add additional defendants to this case and only provided service documents for McMillan and YCDC. [Entry #9].

[2] As Plaintiff alleges a violation of his constitutional rights during his confinement as a pretrial detainee, his claims are evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979); *see also Hill v. Nocodemus*, 979 F.2d 987, 991 (4th Cir. 1992) ("pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description").

[Entry # 47]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Plaintiff of the summary judgment procedures and the possible consequences if he failed to respond adequately to Defendant's motion. [Entry #48]. Plaintiff responded to Defendant's motion on June 28, 2013 [Entry #50] and submitted a sur reply on August 29, 2013 [Entry #59]. These motions having been fully briefed [Entry #50, #58, #59], they are now ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). Because the motions to strike and for summary judgment are dispositive, this Report and Recommendation is entered for review by the district judge. Having carefully considered the parties' submissions and the record in this case, the undersigned recommends granting Defendant's motion for summary judgment, and denying Plaintiff's motion for summary judgment and motion to strike defenses.

I. Factual and Procedural Background

Plaintiff alleges that while he was a pretrial detainee housed in solitary confinement at YCDC, Defendant placed him in a restraint chair for two hours on May 24, 2012. [Entry #1; #1-2 at 3]. According to the complaint, Plaintiff was restrained because he had been kicking and banging on a cell door in an attempt to obtain Defendant's attention. *Id.* Plaintiff alleges injury to his legs resulting from the restraint belts on the chair. [Entry #1; #1-2 at 5]. Plaintiff further complains of a denial of immediate medical attention for his injuries and a denial of grievance forms to begin the YCDC's administrative grievance process. *Id.* Plaintiff seeks monetary damages,

employment at YCDC with a $2,500 per month salary, and full control over YCDC's grievance procedure. [Entry #1; #1-2 at 9].

II. Discussion

   A. Standard on Summary Judgment

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine dispute for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal

court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine dispute of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

B. Analysis

1. Plaintiff's Motion to Strike Defenses

Plaintiff moves to strike defenses presented in Defendant's answer to the complaint based on disagreements as to the applicable law and the relevant facts. [Entry #35]. The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). However, motions to strike "are generally viewed with disfavor because striking a portion of a pleading is a drastic remedy and because it is often sought by the movant simply as a dilatory tactic." *Waste Mgmt. Holdings v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001) (internal citations and quotations omitted). Accordingly, a motion to strike a matter from an answer will not be granted, unless the moving party demonstrates that the challenged material is so unrelated to the plaintiff's claims as to be unworthy of any consideration as a defense such that its presence in the pleading throughout the proceeding will be prejudicial to the moving party." *McIntyre-Handy v. APAC Customer Servs.*, 2006 WL 721383 (E.D. Va. Mar. 20, 2006) (internal citations and quotations omitted).

In the instant motion, Plaintiff alleges that the defenses raised in Defendant's answer are insufficient, immaterial, impertinent, or scandalous for various reasons. [Entry #35 at 3–6]. However, the motion fails to demonstrate that the defenses sought to be stricken are so unrelated to Plaintiff's claims as to be unworthy of any consideration or prejudicial to Plaintiff should they remain in the answer. Therefore, it is recommended that Plaintiff's motion to strike Defendant's defenses be denied.

### 2. Plaintiff's Motion for Summary Judgment

Plaintiff alleges that he is entitled to summary judgment because Defendant failed to timely respond to Plaintiff's interrogatories and request for production. [Entry #46 at 1; Entry #46-1]. Plaintiff renews his motion for summary judgment based on Defendant's "failure to comply with court directives" in a subsequent pleading. [Entry #50-1 at 6]. Defendant acknowledges the inadvertent failure to furnish Plaintiff with documents requested in accordance with a court order, but avers that substantive documents relevant to issues raised in the complaint were provided to Plaintiff on May 23, 2013, with service of Defendant's motion for summary judgment. [Entry #58 at 4, #29]. Additionally, Defendant indicates Plaintiff was served with a complete copy of his YCDC medical file on August 9, 2013. [Entry #58 at 4]. Defendant alleges the YCDC videotape sought by Plaintiff is unavailable because surveillance videos are overwritten after thirty days. [*Id.* at 5; Entry #58-2 at 2–3]. Plaintiff acknowledges receipt of his YCDC medical records on August 9, 2013, but continues to complain that Defendant failed to produce photographs of his leg injuries taken by an investigator on July 3, 2012. [Entry #59 at 3; #1-2 at 8].

After careful review of the parties' submissions, it appears Plaintiff has not been prejudiced by Defendant's untimely service of discovery. Plaintiff supplemented his response to Defendant's motion for summary judgment upon receipt of his medical record.s [Entry #59]. He also fails to demonstrate prejudice resulting from Defendant's failure to produce photographs taken approximately two months after Plaintiff's placement in a restraint chair. As such, the undersigned recommends Plaintiff's motion for summary judgment be denied.

    3.    Defendant's Motion for Summary Judgment

    a.    Exhaustion

Defendant alleges entitlement to summary judgment because Plaintiff has not exhausted his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), specifically 42 U.S.C. § 1997e(a). [Entry #47-1 at 6–8]. Section 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy this requirement, a plaintiff must avail himself of every level of available administrative review. *See Booth v. Churner*, 532 U.S. 731 (2001). Those remedies neither need to meet federal standards, nor are they required to be plain, speedy, and effective. *Porter*, 534 U.S. at 524.

6

Here, a review of Plaintiff's grievance history reveals that he did not file a grievance concerning his placement in a restraint chair by Defendant, or the alleged subsequent denial of medical care. [Entry #47-3 at 3]. Plaintiff's complaint and response in opposition to Defendant's motion for summary judgment do not dispute his failure to file a grievance concerning the May 2012 incident. Instead, Plaintiff claims Defendant frustrated his attempts to exhaust his administrative remedies by refusing to provide Plaintiff with the necessary grievance forms to do so. [Entry #50-1 at 1–2, #50-2 at 3–4]. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Because Defendant has not shown that grievances were made available for Plaintiff, the undersigned cannot conclude that Defendant is entitled to summary judgment for Plaintiff's lack of exhaustion.[3]

### b. Excessive Force

Plaintiff claims that Defendant used excessive force by placing him in a restraint chair. It is well-established that the use of excessive force upon an inmate by correctional officers violates the constitutional prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). In an excessive force case, a claimant must meet a heavy burden to satisfy the subjective component of the claim; specifically, he must prove that correctional officers applied force "maliciously and sadistically for the

---

[3] To the extent Plaintiff alleges his due process rights have been violated by Defendant's failure to provide grievance forms [Entry #50-1 at 4], such a claim fails because inmates have no constitutional right to a grievance procedure. *See Adams v. Rice*, 40 F.3d 72 (4th Cir. 1994).

very purpose of causing harm," rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *see also Wilkins v. Gaddy*, 559 U.S. 34 (2010). The objective component of an excessive force claim is not nearly as demanding, however, because "'[w]hen prison officials maliciously and sadistically use force to cause harm'. . . 'contemporary standards of decency always are violated . . . whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.'" *Wilkins*, 559 U.S. at 37 (quoting *Hudson*, 503 U.S. at 9).

However, courts must give "wide-ranging deference" to the execution of policies and practices that in the judgment of the prison officials are necessary "to preserve internal order and discipline and to maintain institutional security." *Whitley,* 475 U.S. at 321–22. The Supreme Court has recognized that prison officials work in an environment where there is an ever-present potential for violence and unrest, and that courts should not substitute their judgment for that of officials who must make a choice at the moment when the application of force is needed. *Id.* The deference owed to prison administrators extends to "prophylactic or preventive measures intended to reduce the incidence of . . . breaches of prison discipline." *Id.* at 322. Thus, the Supreme Court has directed courts to balance several factors in determining whether prison officials acted maliciously and sadistically. These factors include (1) the necessity for the application of force; (2) the relationship between the need for force and the amount of force used; (3) the extent of the injury actually inflicted; (4) the extent of the threat to the safety of the staff and prisoners,

8

as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) the efforts taken by the officials, if any, to temper the severity of the force applied. *Id.* at 321.

A prisoner's placement in a restraint chair "does not in and of itself constitute an excessive use of force, as the use of devices such as restraint chairs . . . have repeatedly been found to be constitutional when used appropriately." *Rodriguez v. Taylor*, C/A No. 9:08-1027-RBH, 2008 WL 5244480, at *8 (D.S.C. Dec. 15, 2008); *see also Mackey v. Anderson Cnty. Det. Ctr*, C/A No. 6:06-1180-GRA-WMC, 2007 WL 1656231 (D.S.C. June 5, 2007) (finding detainee's placement in a restraint chair for twelve hours was not a *per se* constitutional violation).

Here, it appears that the use of some force was necessary. Plaintiff admits that he began kicking and banging on his cell door on May 24, 2012, to gain Defendant's attention. [Entry #1, #1-2 at 3]. Additionally, Defendant reasonably perceived a threat to safety, as Defendant states that he placed Plaintiff in the restraint chair to "prevent him from disrupting the orderly operations of the facility as well as potentially causing injury to himself, the staff, or the facility." [Entry #47-2 at 2]. *Id.* Although Plaintiff alleges that he posed no "threat to the safety and security of inmates, staff or the facility because he was already housed in a solitary confinement cell" [Entry #1-2 at 4; #50-1 at 3; #50-2 at 6], inmates cannot be allowed to be disruptive and Plaintiff's solitary confinement did not guarantee the prevention of injury to Plaintiff or the facility.

The record also reveals that the amount of force used was proportionate to the threat to safety and that Defendant tempered the amount of force used. For instance,

because Plaintiff complied without incident, no additional force was used to place Plaintiff in the restraint chair. [Entry #47-2]. Further, the record reflects that YCDC staff monitored Plaintiff at fifteen minute intervals throughout the two-hour period of restraint and did not find Plaintiff to be in any serious physical distress during that time. [Entry #47-2 at 3]. Plaintiff likewise indicates that YCDC staff interacted with him while restrained, advising Plaintiff to relax so that the restraints would be less uncomfortable and adjusting the restraint belts at one point. [Entry #1-2 at 4–5]. While Plaintiff alleges that some YCDC officers mocked and laughed at him,[4] *id.*, Plaintiff does not dispute Defendant's contention that staff checked on Plaintiff during the restraint period. Finally, it appears the only injuries Plaintiff sustained were blisters to his legs from the restraints.

After balancing the *Whitley* factors, the undersigned finds that Plaintiff fails to demonstrate that Defendant's use of a restraint chair was malicious and sadistic such that it constituted excessive force. Therefore, it is recommended that Defendant be granted summary judgment on Plaintiff's excessive force claims.

### c. Deliberate Indifference to Medical Needs

Plaintiff alleges that a failure to provide immediate medical attention for his alleged leg injuries constitutes deliberate indifference to his medical needs. In the case of *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court reviewed the constitutional prohibition of punishments which "involve the unnecessary and wanton infliction of pain." *Id.* at 103 (quoting *Gregg v. Georgia*, 428 U.S. 153, 169–73

---

[4] Verbal abuse of an inmate by guards, without more, states no claim. *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990), *aff'd* 917 F.2d 1302 (4th Cir. 1990).

(1976)). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Estelle*, 429 U.S. at 103–105 (citations and footnotes omitted). Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege a constitutional violation:

> [A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Estelle*, 429 U.S. at 106.

The Fourth Circuit has also considered this issue in the case of *Miltier v. Beorn*, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness, . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." *Id.* at 851–52 (citations omitted). Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff

may not prevail. *Estelle*, 429 U.S. at 102–103; *Farmer v. Brennan*, 511 U.S. 825 (1994); *Sosebee v. Murphy*, 797 F.2d 179 (4th Cir. 1986).

Here, Plaintiff has not demonstrated a claim of deliberate indifference to a serious medical need. Plaintiff alleges that Defendant failed to provide medical treatment for Plaintiff's leg pain immediately after his release from the restraint chair on May 24, 2012. [Entry #59 at 1, *see also* Entry #1 (alleged seven-day delay in medical treatment)]. An affidavit and medical records provided by Defendant demonstrate that Plaintiff received medical treatment on May 31, 2012, for "complaints of blistered areas on both legs." [Entry #58- at 1, #58-4]. A nurse determined Plaintiff's wounds were superficial and provided triple antibiotic ointment. *Id*. Plaintiff also visited a nurse on June 5, 2012, who provided more antibiotic ointment and noted that Plaintiff's wounds "were scabbed over and healing without any problems." [Entry #58-3 at 2, #58-5]. Plaintiff agrees that he received medical treatment and antibiotic ointment for his leg injuries on May 31, 2012, and June 5, 2012, and provides no indication that such medical care was inadequate. [Entry #1-2 at 7]. While Plaintiff alleges permanent scarring caused by the blisters [Entry #50-1 at 3], he also stated that on May 26, 2012, he was able to exercise his legs. [Entry #1-2 at 6]. Because Plaintiff was provided medical attention within seven days for what were found to be superficial leg blisters, he has not shown that the treatment provided was "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness" that it constitutes deliberate

indifference to Plaintiff's serious medical needs. *Miltier*, 896 F.2d at 851.[5] Therefore, the undersigned recommends that Defendant be granted summary judgment on Plaintiff's deliberate indifference claims.

> d. Qualified Immunity

Defendant further alleges he is entitled to qualified immunity from suit. [Entry #47-1 at 12–16]. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether Defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that a court "must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citation omitted); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general

---

[5] To the extent Plaintiff alleges that defendant's actions constitute negligence, such allegations are insufficient to state a claim pursuant to § 1983. *See Daniels v. Williams*, 474 U.S. 327, 335–36 n.3 (1986).

13

public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient factual allegations to support his constitutional claims. Nevertheless, assuming arguendo that Plaintiff has presented sufficient evidence of a constitutional violation, Defendant is entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Id.*, 973 F.2d at 298 (internal quotations and citations omitted).

Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find the existence of a constitutional violation, Defendant is still entitled to qualified immunity. The record before the court demonstrates that Defendant performed his official duties in an objectively reasonable fashion and did not knowingly transgress any of Plaintiff's statutory or constitutional rights in the exercise of his professional duties. Thus, to the extent the district judge finds that a constitutional violation occurred, Defendant is entitled to qualified immunity from suit.

14

III. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Plaintiff's motions to strike defenses [Entry #35] and for summary judgment [Entry #46] be denied and Defendant's motion for summary judgment [Entry #47] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

October 24, 2013                                    Shiva V. Hodges
Columbia, South Carolina                United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).